UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

J & J SPORTS PRODUCTION, LLC, )
               )
  Plaintiff,          )
               )
  v.             )    Case No. 4:15 CV 1532 RWS
               )
GINGER ASIAN BISTRO, INC.,    )
d/b/a GINGER BISTRO, et al.,    )
               )
  Defendants,        )

## **MEMORANDUM AND ORDER**

  This matter is before me on Plaintiff J&J Sports Productions, Inc.'s motion for a default judgment against Defendant Ginger Asian Bistro, Inc., d/b/a Ginger Bistro. J&J Sports paid for and was thereafter granted the exclusive nationwide television distribution rights to: "*The One Floyd Mayweather, Jr. v. Saul Alvarez, WBC Light Middleweight Championship Fight Program*" telecast on September 14, 2013 and the "*Floyd Mayweather, Jr. v. Robert Guerrera, WBC Welterweight Championship Fight Program*" telecast on May 4, 2013. J&J Sports sold the rights to publically exhibit these broadcasts to various public establishments (eg. hotels, racetracks, casinos, bars, taverns, restaurants, social clubs, etc.) Some establishments illegally intercept these types of broadcast and show it to their patrons without obtaining a license to do so from J&J Sports.

  The present lawsuit alleges that Defendant Ginger Asian Bistro, Inc. illegally

intercepted the broadcasts and played them to patrons at the Ginger Bistro in University City. Missouri. J&J Sports asserts claims under two alternative federal statutes and for state law conversion.

J&J Sports asserts a claim for each illegally intercepted broadcast at issue pursuant to the Unauthorized Reception of Cable Services, 47 U.S.C. § 553. This statute prohibits the unauthorized receipt of programing from a cable service like Charter Communications. It provides for statutory damages of not less than $250 but not more than $10,000. Id. at §553(c)(3)(A)(ii). Where the violation was committed willfully and for the purpose of commercial gain the statutory damages may be increased in an amount of not more than $50,000. Id. at § 553(c)(3)(B). Attorney's fees and costs may also be recovered under this statute. Id. at § 553(c)(2)(C).

In addition, J&J Sports asserts a claim for each broadcast under the Unauthorized Publication or Use of Communications, 47 U.S.C. § 605. In the context of the present lawsuit, this statute prohibits the interception of video programming from a satellite that is primarily intended for the direct receipt by cable operators to send out over their cable network. It provides for statutory damages of not less than $1,000 but not more than $10,000. Id. at § 605(e)(3)(C)(i)(II). Where the violation was committed willfully and for the purpose of commercial gain

2

the statutory damages may be increased in an amount of not more than $100,000. Id. at § 605(e)(3)(C)(ii). Attorney's fees and costs may also be recovered under this statute. Id. at § 605(e)(3)(B)(iii).

J&J Sports also asserts state law conversion claims based on the two broadcasts. According to an affidavit submitted by the president of J&J Sports, the fee it would have collected from Ginger Bistro based on its occupancy limit was $4,200 per event for a total of $8,400.

Defendant Ginger Asian Bistro, Inc. has been served with this lawsuit. On July 28, 2016, the Clerk of Court entered a default against the Ginger Asian Bistro, Inc. because it failed to file an answer or other responsive pleading.

J&J Sports filed a motion for a default judgment. In its motion J&J Sports seeks a total of $340,000 plus $641.90 in "court costs." J&J Sports also prays for $2,500.00 in attorney's fees. In requesting a judgment of $340,000, J&J Sports seeks to collect statutory damages under both § 605 and under § 553. J&J Sports can recover either under § 605 if Ginger Asian Bistro intercepted the broadcast from a satellite or under § 553 if Ginger Asian Bistro intercepted the broadcast from a cable service. J&J Sports cannot recover damages under both statutes.

J&J Sports' investigator stated in her affidavit, regarding the May 4, 2013 claim, that Ginger Bistro had a maximum occupancy of 100 patrons. She reported that approximately fifteen patrons were in the establishment during the forty minutes

that she was there. A different investigator visited the Ginger Bistro on September 14, 2013. She reported that that Ginger Bistro had a maximum occupancy of 200 patrons and up to 115 patrons were in the establishment during the twenty-seven minutes she was there.[1]

Neither the complaint nor any other filings in this matter indicate which method Ginger Asian Bistro used to intercept the broadcast. I will therefore grant J&J Sports a default judgment under § 605. J&J Sports' licensing fee for each telecast would have been $4,200 for a total of $8,400. Based on that fee I will grant a judgment for statutory damages for each violation (Counts I and V) in the amount of $10,000 under § 605(e)(3)(C)(i)(II) for a total of $20,000. In order to deter future infractions I will also award an additional $10,000.00 in enhanced statutory damages under § 605(e)(3)(C)(ii) for each violation for a total of $20,000. I will also grant J&J Sports their costs in the amount of $641.90 under § 605(e)(3)(B)(iii).

Finally, J&J Sports seeks an award of attorney's fees. J&J Sports' counsel has submitted an affidavit that he spent ten hours on this case at the rate of $250 per hour. I find the time and rate to be reasonable and will award attorney's fees in the amount of $2,500. The total award will be in the amount of $43,141.90.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff's motion for default judgment

---

[1] A second investigator was present on September 14, 2103 at around the same time of the evening for approximately thirty minutes. She submitted an affidavit which stated the capacity of Ginger Bistro was 150 patrons and that up to 75 patrons were present. A third investigator submitted an affidavit for the September 14, 2013 event. He was there at approximately the same time as the other investigators. He states that he counted approximately 125 people at Ginger Bistro.

[#29] is granted in part only to the extent set out above and is denied in all other respects. A judgment will be entered in Plaintiff's favor in the amount of $43,141.90.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 4th day of October, 2016.